UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY HAYNES,

          Plaintiff,                    CIVIL ACTION NO. 08-13091

          v.                      DISTRICT JUDGE GERALD E. ROSEN

DR.  KEITH IVENS, DR. JEFFREY      MAGISTRATE JUDGE MARK A. RANDON
STIEVE, JOHN DOES, HOWARD
TYREE, KAREN PETERS,
HEATHER BAILEY, MICHIGAN
DEPARTMENT OF CORRECTIONS,
PAIN MANAGEMENT COMMITTEE
MEMBERS, and CORRECTIONAL
MEDICAL SERVICES, INC.,

          Defendants.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS CORRECTIONAL
MEDICAL SERVICES, INC., KEITH IVENS, M.D., AND HOWARD
TYREE, P.A.'S MOTION TO DISMISS (DKT. NO. 43)**

## I.  INTRODUCTION

Plaintiff Randy Haynes (Plaintiff), a Michigan prisoner, brought this 42 U.S.C. § 1983

action alleging that multiple defendants were deliberately indifferent to his serious medical needs

in violation of the Eighth Amendment.  Presently before the Court is the motion to dismiss of

Correctional Medical Services, Inc. ("CMS"), Keith Ivens, M.D. ("Dr. Ivens"), and Physician

Assistant Howard Tyree ("P.A. Tyree") (collectively "the CMS Defendants"). (Dkt. No. 43)  The

CMS Defendants move for dismissal on two grounds: (1) that Plaintiff failed to exhaust his

administrative remedies, and (2) that Plaintiff's Complaint allegations fail to state a claim upon

which relief can be granted.  Pursuant to 28 U.S.C. § 636(b)(1)(B), the motion has been referred

to the undersigned for a Report and Recommendation ("R&R"). (Dkt. Nos. 18 and 37)  For the

reasons discussed below, it is RECOMMENDED that the motion be GRANTED.

## II.  FACTS

### A.    Background

At all times relevant to this case, Plaintiff has been incarcerated at the MDOC's Standish

Maximum Correctional Facility ("SMCF").  Plaintiff's Complaint chronicles his attempts to

receive medical treatment for a deteriorating spinal condition and concomitant pain.  Plaintiff

claims his ordeal began with a "kite"[1] to SMCF Health Care, in June of 2006, complaining of

"extreme pain in his hip" and difficulty walking distances.  (Dkt. No. 1, ¶ 4)  For the next

nineteen (19) months – until his spinal fusion and laminectomy[2] surgery on January 10, 2008 –

Plaintiff avers that his requests for medical evaluation and treatment of his condition and pain

were either ignored or mismanaged, resulting in unnecessary pain and suffering.  (Dkt. No. 1, ¶¶

84, 16, 18, 30, 43 and 62)

---

[1] A "kite" is prison slang for any type of written communication. Raul R. Salinas, Raulsalinas and the Jail Machine, p. 20 (University of Texas Press 2006).

[2] Laminectomy - excision of the posterior arch of a vertebra. Dorland's Illustrated Medical Dictionary 1017 (31st ed. 2007).

Although Plaintiff filed several grievances regarding his condition, the initial x-ray of his hip on January 29, 2007, was negative and noted only mild spondylolisthesis.[3]  Unfortunately, Plaintiff's overall back condition progressively worsened over a period of several months, with intermittent periods of improvement.[4]  (Dkt. No. 1, ¶¶ 7, 10, 17 and 25-26)  On August 28, 2007, Plaintiff was diagnosed as having at least grade I spondylolisthesis, the least severe level.  (Dkt. No. 1, Ex. 6)  By October 25, 2007, the spondylolisthesis had progressed to grade II (Dkt. No. 1, Ex. 12) and continued to deteriorate over the following months until surgical intervention was necessary in January of 2008.  (Dkt. No. 1, Ex. 15)  Throughout this period, Plaintiff acknowledges receiving the following diagnostic tests and medical services: 1) x- rays (Dkt. No. 1, ¶¶ 5, 7, 9, 37); 2) an MRI (Dkt. No. 1, ¶¶ 20 and 22); 3) pain medication (Dkt. No. 1, ¶¶ 9, 10, 18, 28, 42, 53, 58, 74 and 83); 4) other medications (Dkt. No. 1, ¶¶ 67); 5) hospital visits (Dkt. No. 1, ¶¶ 22, 39, 66, 80 and 84), and finally 6) the surgical intervention in January, 2008, which was so successful and effective that Plaintiff, in his own words, "is now almost completely pain free, and can walk unaided."  (Dkt. No. 1, ¶ 88)

Following surgery, Plaintiff alleged "post-operative complications," and a continued denial of treatment in the form of a delay in providing an extra mattress and gym shoes (for his

---

[3] "Spondylolisthesis" is "a forward shift of one vertebra upon another, due to a defect of the joints that normally bind them together.  This may be congenital or develop after injury.  The majority of cases in which pain is present are treated with rest and a surgical belt or corset; in a small minority, showing severe disability or pressure on nerve roots, surgical fusion may be required."  "Spondylolisthesis," *The Bantam Medical Dictionary*, revised edition (1990).

[4] For example, Plaintiff states that on "10/27/07 was unable to move *again*, and requested a self-imposed Lay-In."  (Dkt. No. 1, ¶ 67) (Emphasis added)  This suggests that the most serious manifestations of his condition were sporadic.

alleged lower back pain).[5]  These allegations are set forth in Plaintiff's Supplemental Complaint

dated June 16, 2009 (Dkt No. 29) and relate only to P.A. Tyree (and Defendant Stieve who is not

a party to this motion).  Plaintiff's lawsuit seeks monetary damages and injunctive relief.

**B.     *Plaintiff's Specific Complaint Allegations Against the CMS Defendants***

Plaintiff's entire allegations against the CMS Defendants are set forth below.

**1.     *CMS***

Plaintiff's sole allegation against CMS is that it "has a policy or custom that lead to the

plaintiff's Constitutional violations."  (Dkt. No. 1, Claims for Relief ¶ 8)  There are no

allegations against CMS in Plaintiff's Supplemental Complaint.

**2.     *Dr. Ivens***

Plaintiff's allegations against Dr. Ivens are found in paragraphs 18 and 62 of his

Complaint.  In paragraph 18, Plaintiff alleges that on or about December 19, 2006, a Physician

Assistant informed him that Dr. Ivens told her that Plaintiff was not a candidate for an MRI or

surgery and was to be placed on Motrin or Tylenol.  In paragraph 62, Plaintiff claims that on

October 2, 2007, Dr. Urban told him that Dr. Ivens had denied a request for a neurologist

consultation.  There are no allegations against Dr. Ivens in Plaintiff's Supplemental Complaint.

**3.     *P.A. Tyree***

Plaintiff's allegations against P.A. Tyree are found in paragraph 43 of his Complaint.

There, Plaintiff recounts his meeting with P.A. Tyree on September 5, 2007.  Plaintiff claims

Tyree was "very hostile;" advised Plaintiff that his MRI and x-ray "showed arthritis, and not any

---

[5] Plaintiff alleges that he received these items on March 15, 2009.

pinched nerves;" said that nothing could be done about his condition, and that Plaintiff "should learn to live with it."  In his Supplemental Complaint, Plaintiff further alleges that P.A. Tyree was aware of the recommendation for an extra mattress and gym shoes but disregarded it with the intent to injure Plaintiff.  (Dkt. No. 29, ¶ 103)

**C.      *The MDOC's Grievance Procedure***

The MDOC provides prisoners with a method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement.  The grievance procedure and applicable rules are set forth in MDOC Policy Directive 03.02.130 ("the Policy") (Dkt. No. 22, Ex. A).  The Policy was last updated on March 5, 2007, and became effective for all grievances, including most of Plaintiff's, filed after July 9, 2007.[6]

The Policy outlines a three-step written grievance procedure. Prior to filing a grievance at Step I, a prisoner is generally required to seek an informal resolution of the issue with the staff member involved.  A prisoner may file a grievance at the next step if he is dissatisfied with the response received at the previous step, or if a timely response is not received.

In outlining what should be included in a grievance, the Policy requires, in part, that prisoners adhere to the following procedural rules:

---

[6] The basic requirements of the previous policy are the same as the Policy adopted in 2007.  Additionally, the specific language requiring that the names of parties be included in a prisoner's grievance are identical in both versions.  (*See* Dkt. No. 43, Ex. A, ¶ T and Ex. B ¶ R)

        R.       The issues should be stated briefly and concisely.
                Information provided is to be limited to the facts involving
                the issue being grieved (i.e., who, what, when, where, why,
                how). Dates, times, places, and *names of all those involved*
                *in the issue being grieved are to be included*.

(Emphasis added).

### D.   *Plaintiff's Grievances*

Plaintiff filed eight grievances through Step III of the Policy between June, 2006, the date

on which Plaintiff's allegations began, and July 17, 2008, the date on or about which Plaintiff

filed his Complaint.  (Dkt. No. 43, Ex. C)  The eight relevant grievances are as follows: 1)

SMF-2006-10-2192-12d1 (Dkt. No. 43, Ex. D); 2) SMF-2006-09-2149-01z (Dkt. No. 43, Ex. E);

3) SMF-2007-09-1730-12d3 (Dkt. No. 43, Ex. F); 4) SMF-2007-09-1787-12d3 (Dkt. No. 43, Ex.

G); 5) SMF-2007-11-2166-12f (Dkt. No. 43, Ex. H); 6) SMF-2007-12-2457-12f3 (Dkt. No. 43,

Ex. I); 7) SMF-2007-12-2459-12d2 (Dkt. No. 43, Ex. J); and 8) SMF-2008-09-1754-12e3 (Dkt.

No. 43, Ex. K).  Although Plaintiff pursued these eight grievances through Step III of the

grievance policy, none of the grievances named, described, or alleged any wrongdoing against

CMS or Dr. Ivens as required by the Policy §R.

With respect to P.A. Tyree, Plaintiff filed two grievances in which his name appears.  On

September 9, 2007, Plaintiff filed Grievance SMF-2007-09-1730-12d3 ("the '07 Grievance")

(Dkt. No. 43, Ex. F).  In relevant part, the '07 Grievance stated:

        On 9/5/07 I was seen by P.A. Tyree.  He informed me that I have
        advanced arthritis in my L-5 L-6 region and that he didn't see any
        pinched nerve from my MRI that was done in Jan. 07.  He was
        very disinterested in my condition, giving the impression he felt I
        was faking my pain.  He told me that there was nothing he could

> do for me at that time. I asked his name so that I could file a
> grievance on him.  He told me his name was P.A. Howard and
> when I asked him if he could write it down for me, he refused and
> dismissed me from his office.  Only later did I find out his real
> name.

The only other exhausted grievance in which P.A. Tyree's name appears is grievance

SMF-2008-09-1754-12e3 (Dkt. No. 43, Ex. K) ("the '08 Grievance") filed by Plaintiff on

September 24, 2008.  P.A. Tyree is not named in the body of the '08 Grievance; however, his

name is referenced on the grievance form as an individual with whom Plaintiff tried to resolve

his issue before filing the grievance.  The subject of the '08 Grievance concerned the refusal of

"Health Care" to follow the post-operation treatment recommendations of neurosurgeon, Dr.

Rawal.

### III.  ANALYSIS

*A.*     ***Standard of Review***

    *1.*     ***Fed. R. Civ. P. 12(b)(6) and 42 U.S.C. § 1997e(a)***

A complaint fails to state a claim upon which relief can be granted when it is clear that no

relief could be granted under any set of facts that could be proved consistent with the allegations

of the complaint.  *Jones v. City of Carlisle,* 3 F.3d 945, 947 (6th Cir. 1993).  To state a claim

under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal

Constitution or laws and must show that the deprivation was committed by a person acting under

color of state law.  *West v. Atkins,* 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.,* 102 F.3d

810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source

of substantive rights itself, the first step in an action under § 1983 is to identify the specific

constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266 (1994). However, prisoner suits, alleging constitutional deprivations while incarcerated, are subject to the additional prerequisite of satisfying the administrative exhaustion requirements of 42 U.S.C. § 1997e(a). *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

**B.     *The Prison Litigation Reform Act***

   **1.      *The Meaning and Purpose of Proper Exhaustion***

   Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot bring a civil rights action challenging prison conditions until "such administrative remedies as are available are exhausted." 42 U. S. C. § 1997e(a). The Supreme Court defines proper exhaustion as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) quoting, *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93, quoting, *Porter v. Nussle,* 534 U.S. 516, 525 (2002). As the *Woodford* Court explained, the benefits of exhaustion are unattainable if prisoners ignore the rules:

   > The benefits of exhaustion can be realized only if the prison
   > grievance system is given a fair opportunity to consider the
   > grievance. The prison grievance system will not have such an

- 8 -

> opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction.

*Woodford,* 548 U.S. at 95. Therefore, an incomplete or otherwise improper grievance, though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement.

The sanction for failure to exhaust is best illustrated by the Sixth Circuit's recent opinion affirming a district court's dismissal of a prisoner's §1983 claim. *Sullivan-El v. Pramstaller*, 2007 WL 2701949 (E.D. Mich.), *aff'd*, 316 Fed.Appx. 469 (6th Cir. 2009). In his grievance, Sullivan-El had complained that "Health services at NRF" had improperly denied him medication for his blood pressure and urinary problems. However, his subsequent lawsuit was filed against several individually named medical personnel. On reconsideration, the district court dismissed the case for failure to exhaust administrative remedies as to the medical personnel, and Sullivan-El appealed. The Sixth Circuit held:

> The Defendants moved for reconsideration, arguing that when Sullivan filed his grievance, MDOC policy explicitly required him to name each person against whom he grieved. See Policy Directive No. 03.02.130. . . We agree and thus affirm. (Citations omitted)

*Sullivan-El*, 316 Fed.Appx. at *470. The MDOC policy referenced in *Sullivan-El* was a previous version of the Policy at issue herein and contains the identical language requiring prisoners to name each person involved with the grievance.

- 9 -

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court overturned the Sixth Circuit's total exhaustion rule and its requirement that prisoners specifically plead exhaustion in their complaints.  However, like the instant motion, failure to exhaust may still be raised as an affirmative defense.

> **2.      *Plaintiff Failed to Exhaust his Administrative Remedies as to CMS and Dr. Ivens***

As in *Sullivan-El*, not a single one of Plaintiff's eight exhausted grievances name CMS or Dr. Ivens  –  in some grievances no names are mentioned; in others health care is mentioned, and in yet others, Plaintiff provides the specific names (of other defendants) as required by the Policy. However, since Plaintiff failed to comply with the MDOC's procedural rules as it relates to CMS and Dr. Ivens, dismissal of his claims against them should be the result.

> **3.      *Plaintiff Exhausted his Administrative Remedies as to P.A. Tyree for his Original Complaint Allegations Only***

Plaintiff's Complaint allegations against P.A. Tyree (Dkt. No. 1, ¶ 43) mirror those set forth in the '07 Grievance. (Dkt. No. 43, Ex. F)  Plaintiff identified P.A. Tyree by name and pursued the grievance through Step III; therefore, Plaintiff exhausted his administrative remedies as to P.A. Tyree with respect to those specific allegations set forth in his Complaint.  However, the '07 Grievance was filed several months before the allegations set forth in Plaintiff's Supplemental Complaint (concerning the extra mattress and gym shoes).  Therefore, the '07 Grievance could not have exhausted the claims set forth in Plaintiff's Supplemental Complaint.

The '08 Grievance was filed on September 24, 2008, and involves a claim against "Health Care" – not P.A. Tyree.  As such, like *Sullivan-EL*, it is insufficient to exhaust Plaintiff's

Supplemental Complaint allegations against P.A. Tyree individually.  Moreover, at least one of Plaintiff's two Supplemental Complaint allegations post-date the '08 Grievance.  Specifically, in paragraph 100, Plaintiff recounts a meeting in which P.A. Tyree told him "[a]s long as I'm here, you'll not receive any help!"  P.A. Tyree is then alleged to have had Plaintiff's extra mattress taken away.  However, this event occurred on November 12, 2008 (Dkt. No. 29, ¶ 100) – three weeks after Plaintiff filed the '08 Grievance – and could not have anticipated events which had not yet occurred.  Therefore, Plaintiff also failed to exhaust his Supplemental Complaint allegations as to P.A. Tyree.[7]

It should be noted that in *Jones*, *supra*, the Supreme Court held that the PLRA does not require a prisoner to name all potential defendants in his grievances.  *Jones*, 549 U.S. at 217-218 ("it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").  However, *Jones* was based on a previous version of the Policy that did not require prisoners to name all persons involved in their grievances as it did at all times relevant to the Grievance.  As in *Sullivan-El, supra*, the present Policy clearly states that "[d]ates, times, places and names of all those involved in the issue being grieved are to be included."

---

[7] Alternatively, at the time his Supplemental Complaint allegations arose, Plaintiff's condition was not "objectively serious" in as much as he had undergone surgery and was "now almost completely pain free" and could "walk unaided."  (Dkt. No. 1, ¶ 88)  *See, Estelle*, 429 U.S. at 103-104 ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'")

2.      *Plaintiff's Exhausted Claims Fail to State a Claim Against P.A. Tyree*

The CMS Defendants also argue that, alternatively, Plaintiff failed to state a claim against them upon which relief can be granted.[8]  A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97 (1976).  To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs.  *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  To succeed on a claim of deliberate indifference, Plaintiff must satisfy two elements, an objective one and a subjective one. *Wilson*, 501 U.S. at 300.  The objective element is satisfied by a showing that Plaintiff had a serious medical need.  *Wilson*, 501 U.S. at 297; *Farmer v. Brennan*, 511 U.S. 825 (1994).  "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."  *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001), citing *Farmer*, 511 U.S. at 837.  Emphasizing the subjective nature of this inquiry, the Supreme Court has noted that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 838.  Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error.  *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992).  Moreover,

---

[8] This discussion will be limited to P.A. Tyree, since Plaintiff clearly failed to exhaust his administrative remedies as to CMS and Dr. Ivens.

- 12 -

where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

Even if true, Plaintiff's administratively exhausted allegations against P.A. Tyree do not state a claim for deliberate indifference. Plaintiff's Complaint alleges that P.A. Tyree: (1) said Plaintiff's x-ray and MRI "showed arthritis, and not any pinched nerves;" (2) said nothing could be done about Plaintiff's condition and that he should learn to live with it, and (3) was "very hostile" and ordered Plaintiff out of his office. First, Plaintiff does not even allege that P.A. Tyree was wrong or negligent in his interpretation of Plaintiff's x-ray and MRI or in his prognosis that nothing could be done for Plaintiff. (Significantly, as of September 5, 2007, Plaintiff's x-ray and MRI indicated only mild and level I spondylolisthesis, respectively.) But, even if Plaintiff did make such allegations, a complaint that a physician has been negligent in diagnosing or treating a medical condition is insufficient to state a valid claim under the Eighth Amendment. *Estelle*, 429 at 105-106. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Id.* Thus, it is well settled that courts do not typically intervene in questions of medical judgment. *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982). As such, P.A. Tyree's medical judgment, no matter how allegedly flawed, could not give rise to a claim of deliberate indifference.

Second, as to Plaintiff's allegations of hostile and unpleasant treatment by P.A. Tyree, these likewise, do not rise to the level of a claim for deliberate indifference. *Terrance v. Northville Regional Psychiatric Hospital*, 286 F.3d 834, 844 (6th Cir. 2002) quoting *Waldrop v.*

- 13 -

*Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("the denial of care must be "so grossly

incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to

fundamental fairness.")  Therefore, Plaintiff's exhausted claims involving P.A. Tyree should also

be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### IV.  RECOMMENDATION

For the reasons stated above, it is RECOMMENDED that the CMS Defendants' motion to

dismiss be granted and that Defendants CMS, Dr. Ivens, and P.A. Tyree be dismissed from this

lawsuit.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*,

638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to

raise others with specificity, will not preserve all the objections a party might have to this Report

and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v.*

*Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D.

Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be no more than 20 pages in length

- 14 -

unless, by motion and order, the page limit is extended by the court. The response shall address

each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated: December 23, 2009

Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, December 23, 2009, by electronic and/or ordinary mail.

S/Barbara M. Radke
Judicial Assistant, (313) 234-5540