UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY HAYNES,

       Plaintiff,                        CIVIL ACTION NO. 08-13091

     v.                                 DISTRICT JUDGE GERALD E. ROSEN

DR. KEITH IVENS, DR. JEFFREY      MAGISTRATE JUDGE MARK A. RANDON
STIEVE, JOHN DOES, HOWARD
TYREE, KAREN PETERS,
HEATHER BAILEY, MICHIGAN
DEPARTMENT OF CORRECTIONS,
PAIN MANAGEMENT COMMITTEE
MEMBERS, and CORRECTIONAL
MEDICAL SERVICES, INC.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS'**
**MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 36 AND 57)**

**I. INTRODUCTION**

Plaintiff Randy Haynes ("Plaintiff"), a Michigan prisoner, brought this 42 U.S.C. § 1983 action alleging that multiple defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Presently before the Court are two dispositive motions: (1) the motion for summary judgment of the Michigan Department of Corrections ("MDOC"), the Pain Management Committee ("PMC"), Heather Bailey, RN ("Nurse Bailey"), and Karen Peters, RN ("Nurse Peters") (collectively "the MDOC Defendants") (Dkt. No. 36), and (2) the motion for summary judgment of Jeffrey Stieve, M.D. ("Dr. Stieve"). (Dkt. No 57) Pursuant to 28 U.S.C. § 636(b)(1)(B), the motions have been referred to the undersigned for a Report and

Recommendation ("R&R"). (Dkt. Nos. 18 and 37) The undersigned finds that there is no genuine issue of material fact that Plaintiff's chronic condition was appropriately managed and treated. For this reason, and those discussed below, it is RECOMMENDED that both motions be GRANTED. The undersigned previously recommended that the Court grant Defendants CMS, Tyree and Ivens' motion to dismiss. (Dkt. No. 63) This Report and Recommendation relates to the remaining Defendants. If the Court accepts the undersigned's previous Report and Recommendation and the instant Report and Recommendation, then the entire case should be dismissed, with prejudice.

## II. FACTS

*A.    Background*

At all times relevant to this case, Plaintiff has been incarcerated at the MDOC's Standish Maximum Correctional Facility ("SMCF"). Plaintiff's Complaint chronicles his attempts to receive medical treatment for a deteriorating spinal condition and concomitant pain. Plaintiff claims his ordeal began with a "kite"[1] to SMCF Health Care, in June of 2006, complaining of "extreme pain in his hip" and difficulty walking distances. (Dkt. No. 1, ¶ 4) For the next nineteen (19) months – until his spinal fusion and laminectomy[2] surgery on January 10, 2008 – Plaintiff avers that his requests for medical evaluation and treatment of his condition and pain

---

[1] A "kite" is prison slang for any type of written communication. Raul R. Salinas, Raulrsalinas and the Jail Machine 20 (University of Texas Press 2006).

[2] Laminectomy - excision of the posterior arch of a vertebra. Dorland's Illustrated Medical Dictionary 1017 (31st ed. 2007).

were either ignored or mismanaged, resulting in unnecessary pain and suffering.  (Dkt. No. 1, ¶¶ 84, 16, 18, 30, 43 and 62)

Although Plaintiff filed several grievances regarding his condition, the initial x-ray of his hip on January 29, 2007, was negative and noted only mild spondylolisthesis.[3]  Unfortunately, Plaintiff's overall back condition progressively worsened over a period of several months, with intermittent periods of improvement.[4]  (Dkt. No. 1, ¶¶ 7, 10, 17 and 25-26)  On August 28, 2007, Plaintiff was diagnosed as having grade I spondylolisthesis, the least severe level.  (Dkt. No. 1, Ex. 6)  By October 25, 2007, a second MRI revealed that the spondylolisthesis had progressed to grade II (Dkt. No. 1, Ex. 12), and it continued to deteriorate over the following months until surgical intervention was necessary in January of 2008.  (Dkt. No. 1, Ex. 15)  Throughout this period, Plaintiff acknowledges receiving the following diagnostic tests and medical services: 1)  x- rays (Dkt. No. 1, ¶¶ 5, 7, 9, 37); 2) two MRI's (Dkt. No. 1, ¶¶ 20 and 22); 3) pain medication (Dkt. No. 1, ¶¶ 9, 10, 18, 28, 42, 53, 58, 74 and 83); 4) other medications (Dkt. No. 1, ¶¶ 67); 5) hospital visits (Dkt. No. 1, ¶¶ 22, 39, 66, 80 and 84); and finally 6) the surgical intervention on January 10, 2008, which was so successful and effective that Plaintiff, in his own words, "is now almost completely pain free, and can walk unaided." (Dkt. No. 1, ¶ 88)

---

[3] "Spondylolisthesis" is "a forward shift of one vertebra upon another, due to a defect of the joints that normally bind them together. This may be congenital or develop after injury. The majority of cases in which pain is present are treated with rest and a surgical belt or corset; in a small minority, showing severe disability or pressure on nerve roots, surgical fusion may be required." "Spondylolisthesis," *The Bantam Medical Dictionary*, revised edition (1990).

[4] For example, Plaintiff states that on "10/27/07 was unable to move *again*, and requested a self-imposed Lay-In." (Dkt. No. 1, ¶ 67) (Emphasis added)  This suggests that the most serious manifestations of his condition were sporadic.

Following surgery, Plaintiff alleged a continued denial of treatment in the form of a delay in providing an extra mattress and gym shoes recommended by the Medical Service Provider ("MSP").[5]  These allegations are set forth in his supplemental complaint dated June 16, 2009 (Dkt. No. 29) and involve Dr. Stieve, Nurse Bailey and another defendant (Physician Assistant Tyree, who is not a party to this motion).  Plaintiff's lawsuit seeks monetary damages and injunctive relief.

## B.     *Plaintiff's Allegations Against the MDOC Defendants*

### 1.     *The MDOC and PMC*

In response to the MDOC Defendants' motion for summary judgment, Plaintiff clarifies that his complaint did not make a claim against either the MDOC or the PMC.  (Dkt. No. 61)  Instead, Plaintiff sued the individual members of the PMC and has attempted to obtain their names through the discovery process.  (Dkt. No. 61, p. 1)  Therefore, the MDOC and PMC should be dismissed as parties and will not be addressed further in this R&R.[6]

### 2.     *Nurse Peters*

Plaintiff alleges that on September 27, 2007, Nurse Peters stopped the "MSP's orders to extend. . . [his] Vicodin" prescription, and that she failed to address his medical condition while being "well aware plaintiff was in serious medical need."  (Dkt. No. 1, ¶¶ 60, 72 and Claim for Relief ¶ 6)

---

[5] Plaintiff alleges that he received these items on March 15, 2009.

[6] Alternatively, the undersigned would have recommended dismissal because these parties are immune from liability under the Eleventh Amendment.  *See Lawson v. Shelby County, Tennessee*, 211 F.3d 331 (6th Cir. 2000)

### *3.  Nurse Bailey*

Plaintiff alleges that Nurse Bailey "stopped the doctor's orders" to increase his pain medication, claiming there was no midnight nurse to dispense additional medication.  (Dkt. No. 1, ¶ 30)  Plaintiff also alleges that, on or about October 12, 2007, he was told that Nurse Bailey said he should not be sent to the hospital for his medical condition or receive any additional Vicodin, during non-business hours.  (Dkt. No.1, ¶ 64 and Dkt. No. 62, p. 2)  Plaintiff next alleges that Nurse Bailey refused to order him a back brace before his surgery and placed him on "lay-in" status (24 hr. solitary confinement) without justification on August 23, 2007.  (Dkt. No. 1, ¶¶ 33, 65 and 81)  Last, Plaintiff alleges that, following surgery, Nurse Bailey "falsified and covered up his treatment plan" (for an extra mattress and gym shoes).  (Dkt. No. 29, ¶ 104)

### C.  *Plaintiff's Allegations Against Dr. Stieve*

Plaintiff alleges that Dr. Stieve repeatedly denied pain medication (Vicodin) requested by the examining physician (Dkt. No. 1, ¶¶ 51 and 72) and denied the MSP's recommendation that Plaintiff receive gym shoes and an extra mattress.  (Dkt. No. 29, ¶¶ 91 and 99)

### III.   ANALYSIS

### A.  *Standard of Review*

The MDOC Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting
affidavits for summary judgment in the party's favor as to all or any part thereof."  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. *See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al.*, 475 U.S. 547, 587 (1986); *see also B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S. Ct. 1575, 1592 (1968)).

**B.     *The MDOC Defendants' Motion for Summary Judgment***

The individual MDOC Defendants are Nurse Bailey and Nurse Peters. They move for dismissal on three grounds: (1) that the evidence on the record does not establish a violation of the Eighth Amendment; (2) that, as supervisors, neither Nurse Bailey nor Nurse Peters had direct involvement in Plaintiff's care or treatment and followed the orders of the Medical Providers as written; and (3) that they are entitled to qualified immunity. (Dkt. No. 36, p. I)

### 1.     *Eighth Amendment Denial of Adequate Medical Care*

A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97 (1976).  To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  To succeed on a claim of deliberate indifference, Plaintiff must satisfy two elements, an objective one and a subjective one. *Wilson*, 501 U.S. at 300.  The objective element is satisfied by a showing that Plaintiff had a serious medical need. *Wilson*, 501 U.S. at 297; *Farmer v. Brennan*, 511 U.S. 825 (1994).  "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001), citing *Farmer*, 511 U.S. at 837.  Emphasizing the subjective nature of this inquiry, the Supreme Court has noted that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.  Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error. *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir.1992).  Moreover, where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

### 2.     *Respondeat Superior*

Allegations premised on respondeat superior liability are foreclosed in § 1983 actions. *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). In *Bellamy v. Bradley*, the Sixth Circuit stated that in order to impose liability on supervisory personnel, a Plaintiff must show more than having brought offending conduct to the attention of supervisory officials:

> In *Hays v. Jefferson County,* 668 F.2d 869 (6th Cir. 1982), we held that the § 1983 liability of supervisory personnel must be based on more than the right to control employees. Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate. *Hays*, 668 F.2d at 872-74.

Moreover, a supervisory official's awareness of alleged *illegal* conduct *after the fact* does not provide a basis for imposition of damages under 42 U.S.C. § 1983. *Weaver v. Toombs*, 756 F. Supp. 335, 337 (WD Mich, 1989). Merely being aware of a prisoner's complaint and failing to take corrective action is insufficient to impose liability on supervisory personnel under § 1983. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988), *cert. den.*, 488 U.S. 1007 (1989). The supervisor must have directly participated in the alleged *wrongful* conduct:

> [A] supervisory official's failure to, control, or train the offending individual is not actionable, unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it."

*Id.* at 429.

C.    *Nurse Peters*

Nurse Peters is the Health Unit Manager for SMCF. (Dkt. No. 41, Ex. A) Plaintiff alleges that she failed to act, though aware of his serious medical condition. (Dkt. No. 1, Claim for Relief ¶ 6) Plaintiff's Complaint is devoid of any allegation that, as a supervisor, Nurse Peters directly participated in or encouraged his mistreatment. Therefore, as set forth above, this allegation is insufficient to establish liability against Nurse Peters. *Poe*, 853 F.2d at 429.

Plaintiff's only other claim against Nurse Peters is that she stopped orders to extend Plaintiff's prescription of Vicodin. (Dkt. No. 1, ¶ 36) However, as a registered nurse, Nurse Peters can only provide the treatments and medication ordered by a licensed Medical Provider (Dkt. No. 41, Ex. A, ¶6), and Plaintiff's Complaint make clearly indicates that Dr. Stevie – not Nurse Peters – discontinued his Vicodin prescription. (Dkt. No. 1, ¶¶ 51 and 72) As such, Nurse Peters is also entitled to summary judgment on this claim.

D.    *Nurse Bailey*

In response to the MDOC Defendants' motion for summary judgment, Plaintiff articulates his complaint allegations against Nurse Bailey as follows:

> Plaintiff is alleging that RN Bailey acted in a discretionary function when she first became personally involved with Plaintiff's treatment on 8/23/07, when she placed the plaintiff on solitary confinement [lay-in status (see Dkt. No. 1, ¶ 33)]. . . when she told RN Svenson not to send the plaintiff to the hospital or get him any narcotic relief if he had problems with his injury during non-business hours, refused to follow Dr. Urban's orders to get plaintiff a brace for relief of pain, stopped the doctor's orders to increase the plaintiff's pain medication from 3 times a day to 4 times a day, stating that there was not a midnight nurse to pass out additional medications, canceled Dr. Burtch's order for pain medication.

(Dkt. No. 61, p. 2)

### 1.     *Placing Plaintiff on Lay-in Status (Solitary Confinement)*

Nurse Bailey denies placing Plaintiff on lay-in status, indicating only that there was a detail written for no work. (Dkt. No. 41, Ex. B, ¶10) Nurse Bailey's statements are supported by the medical records: on August 23, 2007, Plaintiff was placed on a no-work detail and the order was written by Nurse Alexander – not Nurse Bailey. (Dkt. No. 46, Ex. F., p. 379) Even if this were not the case, however, Plaintiff's allegation still would not amount to an Eighth Amendment violation and serves to illustrate the futility of this claim.

Plaintiff requested a "self-imposed lay-in" for his back condition on September 4, 2007, less than two weeks after he alleges Nurse Bailey improperly did so. (Dkt. No. 1, ¶ 40) He again requested a self-imposed lay-in on October 27, 2007, and did not object to being placed on lay-in status by RN Alexander on November 10, 2007. (Dkt. No. 1, ¶¶ 75-76) Therefore, Nurse Bailey's purported response to the "obvious pain. . . [Plaintiff] was suffering" at the time (Dkt. No. 1, ¶32) was identical to the treatment *Plaintiff subsequently imposed on himself* for his condition and, therefore, could not be "so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness" as a matter of law. *Terrance v. Northville Regional Psychiatric Hospital,* 286 F.3d 834, 844 (6th Cir. 2002) quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).

### 2.     *Denying Plaintiff Pain Medication or Hospitalization*

This allegation is based on what Plaintiff claims another nurse said[7] that Nurse Baily said. Nurse Bailey denies telling anyone Plaintiff should not be given pain medication or hospitalized if his condition required. (Dkt. No. 41, Ex. B, ¶16) However, notwithstanding the

---

[7] This other nurse, RN Svenson, is no longer employed by the MDOC.

frailty of Plaintiff's allegation, hospitalization for a chronic condition, which on the date of Plaintiff's allegation (October 12, 2007) had been diagnosed as the lowest level of spondylolisthesis, would not have been appropriate, much less rise to the level of an Eighth Amendment violation. In addition, as noted earlier, Nurse Bailey had no authority to discontinue pain medication. (Dkt. No. 41, Ex. B, ¶ 9) The Vicodin prescription was discontinued by Dr. Stieve. (Dkt. No. 1, ¶¶ 51 and 72)

### 3. *Failure to Order a Back Brace and Cancelling Doctor's Orders*

Once again, Plaintiff's allegation regarding the failure of Nurse Bailey to order a back brace (on October 17 and December 13, 2007) is based on secondhand information (from Nurse Svenson). In her affidavit, Nurse Bailey unequivocally states that she ordered a back brace for Plaintiff on October 17, 2007.[8] (Dkt. No. 36, Ex. B, ¶18) In response, other than restating his complaint allegation, Plaintiff fails to raise a genuine issue for trial and does not deny Nurse Bailey's statement. This is insufficient to avoid summary judgment.

Plaintiff's last series of allegations against Nurse Bailey relate to his allegations that she:

> stopped the doctor's orders to increase the plaintiff's pain medication from 3 times a day to 4 times a day, stating that there was not a midnight nurse to pass out additional medications, canceled Dr. Burtch's order for pain medication.

Nurse Bailey denies that Dr. Burtch increased Plaintiff's pain medication from three to four times a day. (Dkt. No. 36,Ex. B, ¶ 9) And, even assuming that Nurse Bailey did say, contrary to her affidavit, that Plaintiff could not get additional medication after hours for lack of an available nurse to dispense it, such conduct would not rise to the level of an Eighth Amendment violation.

---

[8] Plaintiff admits that Nurse Bailey told him she ordered him a back brace on October 17, 2009. (Dkt. No. 1, ¶ 65)

A prison nurse is not required to let an inmate self-medicate, and Plaintiff does not allege that Nurse Bailey controlled nurse staffing levels. Furthermore, Plaintiff's allegations state that an "unknown person" or Dr. Stieve cancelled Dr. Burtch's order for pain medication. (Dkt. No. 1, ¶¶ 51 and 72)

### 4. *Supplemental Complaint Allegations*

With respect to Plaintiff's Supplemental Complaint allegation that Nurse Bailey was involved in a cover-up to delay providing him an extra mattress and gym shoes, Plaintiff alleged that following surgery, he has almost no pain and can walk about the prison unaided. (Dkt. No. 1, ¶ 88) Since the claimed cover-up is a post-surgery allegation, Plaintiff's medical condition at the time does not satisfy the Eighth Amendment requirement that it be "objectively serious." *Blackmore v. Kalamazoo County*, 390 F.3d 890 (6th Cir. 2004) quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (A medical need is objectively serious if it is "one that has been diagnosed by a physician as *mandating* treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.") (Emphasis added)

According to Dr. Stieve, the extra mattress and gym shoes were recommendations not medically required treatment: "Dr. Rawal is our consultant. He makes recommendation[s] and we can consider them or choose not to follow them. Prisoner Haynes was neither a candidate for tennis shoes (e.g. due to diabetic neuropathy or foot malformation), nor for an air mattress [which could worsen his condition (Dkt. No. 57, Ex. A, ¶ 19)]." (Dkt. No. 57, Ex. A, ¶ 20) Additionally, Plaintiff's pronouncement that his surgical intervention was completely successful militates against finding an obvious need for a doctor's attention.

*5.     Qualified Immunity*

In the alternative, Nurse Bailey is also immune from liability for Plaintiff's lay-in status, hospitalization, back brace, and post-surgery claims.[9]  "Government officials are immune from civil liability unless, in the course of performing their discretionary functions, they violate the Plaintiff's clearly established constitutional rights." *Jones v. Byrnes*, No. 08-1889 at * 4 (6th Cir. Nov. 9, 2009).  When ruling upon the issue of qualified immunity, the Court must consider two threshold questions:

(1)     Taken in the light most favorable to the nonmoving party, do the facts alleged show the official's conduct violated a constitutional right?  And,

(2)     was the violated constitutional right clearly established under law so as to place a reasonable official on notice that his conduct would be unlawful in the situation she confronted?

See *Saucier v. Katz*, 533 U.S. 194 (2001); relying upon *Anderson v. Creighton*, 483 U.S. 635 (1987); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); and *Wilson v. Laid*, 526 U.S. 603, 615 (1999).  Although *Saucier* mandated a determination of these questions in sequential order, courts are no longer required to do so.  *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808 (2009).

Here, Plaintiff's claims of: an involuntary lay-in; a denial of hospitalization for a chronic back condition; a denial of a back brace, and a denial of an extra mattress and gym shoes were not clearly established constitutional rights.  In other words, under the circumstances discussed above, Nurse Bailey would not have been on notice that her alleged conduct was unlawful.  The undersigned need not engage in further analysis.  Nurse Bailey is immune from liability for these claims.

---

[9] Nurse Peters has also properly argued that she is immune from liability.

Accordingly, for these reasons stated above, the claims against the MDOC Defendants should be dismissed.

### E.     Dr. Stieve's Motion for Summary Judgment

Dr. Stieve moves for summary judgment on two grounds: 1) that his medical judgments supported by evidence based medicine and within the standard of care did not amount to deliberate difference; and 2) that he is entitled to qualified immunity.

#### 1.     Medical Judgment and Qualified Immunity

Where, as here, a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are reluctant to second guess medical judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). In this case, Plaintiff admits that, over a period of many months, he received Motrin, Tylenol, Ultram and Vicodin for his pain. (Dkt. No. 1, ¶¶ 9, 10, 18, 28, 42, 53, 58, 74 and 83) Plaintiff, nevertheless, alleges that Dr. Stieve was deliberately indifferent to his serious medical needs by repeatedly denying the Vicodin recommended by Dr. Urban. According to Dr. Stieve, Vicodin can be addicting and the typical protocol is to limit its use.[10] (Dkt. No. 57, Ex. A, ¶ 17) Dr. Stieve never functioned as Plaintiff's primary care physician. He is part of the PMC, which served to address Plaintiff's pain management needs. While Plaintiff is unhappy with the PMC's decision not to provide Vicodin on an ongoing basis, his displeasure is insufficient to create a triable Eighth Amendment issue. Plaintiff has done nothing more than allege a reasonable difference of medical opinion between two doctors, upon which his claim cannot proceed. *Id.*

---

[10] According to the FDA, prescription pain relievers can be addictive and "[t]he most dangerous pain relievers are those containing drugs known as opoids. . . [including] Vicodin." *See* www.fda.gov/downloads/Drugs/ResourcesForYou/UCM177032.pdf

Plaintiff's post-surgery allegations should be also be dismissed as it would also require the court to second guess the medical judgment of Dr. Stieve.[11]  Alternatively, they could also be dismissed for lack of a "serious medical condition" (§D(3) *supra*), and because Dr. Stieve is immune from liability as discussed above. (§D(4))

## F.     *Prospective Injunctive Relief*

With the exception of prospective injunctive relief, § 1983 claims against state officials in their official capacity are also barred by the Eleventh Amendment as claims against the state itself.  *Will v. Mich Dep't of State Police*, 491 U.S. 58, 71 (1989).  In determining whether a complaint states a claim against a state official for prospective injunctive relief, the reviewing court should conduct "a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring).  In making this inquiry, the court should not analyze the merits of the claim.  *Verizon Maryland Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 646 (2002).

Plaintiff's Complaint does contain a line characterizing the relief sought against Defendants as prospective.  (Dkt. No. 1, p. 15)  However, Plaintiff must also allege a continuing violation of federal law to enjoin.  *Green v. Mansour*, 474 U.S. 64, 73 (1985).  Plaintiff received corrective surgery on January 10, 2008, and the extra mattress and gym shoes were received on March 15, 2009.  He has failed to allege a continuing violation to enjoin.

---

[11] According to Dr. Stieve, he is unaware of any medical literature citing an extra mattress or gym shoes as a treatment for chronic low back pain. (Dkt. No. 57, Ex. A, ¶ 18)

### G.     *The Unserved and Unnamed Defendants Should be Dismissed*

Finally, as to the remaining John Doe defendants,[12] it is recommended that they be dismissed without prejudice. In general, "the use of unnamed defendants is not favored in the federal courts." *Haddad v. Fromson*, 154 F.Supp.2d 1085, 1093 (W.D. Mich. 2001). "An inmate who brings a civil rights complaint must specifically identify each defendant against whom relief is sought and must give each defendant notice of the action by serving upon him a summons and copy of the complaint." *Reed-Bey v. Pramstaller*, No. 06-10934, 2007 WL 2421422, *2 (E.D. Mich. Aug.23, 2007), citing *Feliciano v. DuBois*, 846 F.Supp. 1033, 1048 (D. Mass. 1994). Under Fed. R. Civ. P. 4(m), defendants must be served within 120 days of filing the complaint. Here, Plaintiff has failed to identify or serve the John Doe defendants and this case has been pending for over 120 days (since July 17, 2008); thus, it is recommended that the unnamed Defendants be dismissed without prejudice. *Mackall v. Doe*, No. 05-60083-AA, 2005 WL 1843449, *1 (E.D. Mich. July 29, 2005), citing *Awdish v. Pappas*, 159 F.Supp.2d 672, 673, n. 1 (E.D. Mich. 2001), and *Johnson v. City of Ecorse*, 137 F.Supp.2d 886, 892 (E.D. Mich. 2001). This Report and Recommendation will serve as notice to Plaintiff under Rule 4(m).

### IV.     RECOMMENDATION

For the reasons stated above, it is RECOMMENDED that the Motions for Summary Judgment of the MDOC Defendants (Dkt. No. 36) and of Dr. Stieve (Dkt. No. 57) be GRANTED. It is further RECOMMENDED that the John Doe Defendants be dismissed without prejudice.

---

[12] Plaintiff names "John Does" in the caption of his Complaint but does not describe any conduct attributed to them.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon<br>
MARK A. RANDON<br>
UNITED STATES MAGISTRATE JUDGE

Dated: December 31, 2009

Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, December 31, 2009, by electronic and/or ordinary mail.

S/Barbara M. Radke<br>
Judicial Assistant